IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JOSEPH SELLERS,<br><br>    Plaintiff,<br><br>vs.<br><br>DEERE & COMPANY a/k/a JOHN DEERE COMPANY, and CLYDE D'CRUZ, individual,<br><br>    Defendants. | No. C12-2050 |
| WANDA JO LENIUS AND GARY GENE LENIUS,<br><br>    Plaintiffs,<br><br>vs.<br><br>DEERE & COMPANY a/k/a JOHN DEERE KEVIN KEITH, CLYDE D'CRUZ, KEVIN KEITH, BRIAN MATSON, AND ROBERT BARNES,<br><br>    Defendants. | No. C12-2063 |
| DELYORCE RAYE REBOUCHE,<br><br>    Plaintiff,<br><br>vs.<br><br>DEERE & COMPANY a/k/a JOHN DEERE COMPANY, RODGER BURRIS, AND BRUCE BOARDMAN,<br><br>    Defendants. | No. C12-2064 |

| GAYLE LELA FORSTER, and GREGORY DAVID FORSTER, | |
|---|---|
| Plaintiffs, | No. C12-2072 |
| vs. | RULING ON MOTION FOR PROTECTIVE ORDER |
| DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, individual, KEVIN KEITH, individual, BRIAN MATSON, individual, AND BRIAN CARLSON, individual, | |
| Defendants. | |

On the 6th day of January, 2014, these matters came on for telephonic hearing on the Motion for Protective Oder [sic] filed by Defendant Deere & Company on December 11, 2013. The Plaintiffs were represented by their attorneys, Gregory T. Racette and Amy Pellegrin. Defendants were represented by their attorneys, Frank Harty and Ryan W. Leemkuil.

The Plaintiffs are pursuing claims arising from their employment at Deere. Plaintiffs variously assert discrimination, retaliation, defamation, and negligence. The dispute now before the Court is whether Plaintiffs are entitled to take the deposition of Samuel R. Allen, Deere's chairman and chief executive officer. Deere seeks a protective order pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26(c), asserting that "deposing Mr. Allen serves no purpose but to subject Deere and Mr. Allen to annoyance and undue burden." Plaintiffs argue that Allen has "unique, firsthand knowledge" that is discoverable.

2

Protective orders which totally prohibit the deposition of an individual are rarely granted absent extraordinary circumstances. *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 96 (S.D. Iowa 1992) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)). As the party seeking to prevent the deposition, Deere carries a heavy burden to show why discovery should be denied. *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, *2 (N.D. Cal.). Here, Deere relies on the so-called "apex doctrine." "The apex doctrine 'protects high-level corporate officials from deposition unless (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" *Bank of the Ozarks v. Capital Mortg. Corp.*, 2012 WL 293049, *1 (E.D. Ark.). *See also Groupion*, 2012 WL 359699 at *2 (same). The Court must balance the compelling interests of allowing discovery and protecting the parties and deponents from undue burden. *Bank of the Ozarks*, 2012 WL 293049 at *1.

Plaintiffs apparently want to question Allen regarding two matters. In March 2003, there was a proposal that Gary Lenius' pay grade level would be reduced. On March 6, 2003, Lenius sent an email to Allen, complaining of the proposed reduction in his pay grade. Five days later, after the decision was reversed, Lenius wrote to Allen again:

> Sam, since no one is talking, I can only assume that you were responsible for getting this all this reversed. Words can't describe how grateful I am. . . . . If you ever need anything, let me know. I'll be there to help in any way I can!

Email from Gary G. Lenius to Samuel R. Allen, dated March 11, 2003 (Deere's Exhibit D).

In his deposition taken on August 7, 2013 (ten years after the events), Lenius was asked what he did in order to get the decision reversed. Lenius began his answer by

stating: "Sam Allen told me not to talk about this."[1] Lenius testified that he sent an email to Allen on Thursday or Friday, and was advised when he returned to work on Monday that the decision had been reversed. Lenius concluded his answer by stating: "I can only assume Sam made all this go away. He told me he notified some people, the appropriate people, and it got rectified."[2] In response to the follow-up question, however, Lenius backed off the suggestion that he had spoken with Allen.

> Q. You said Sam told you. Did you actually speak with Sam about this, or did you communicate with him by email?
>
> A. I communicated by email, and he sent me an email back, which you've got a copy of, don't you? I mean it's in this thing somewhere. I can't quite remember the dates. I really didn't want to talk about Sam on that particular issue.

Deposition of Gary Lenius, 81:7-14 (Plaintiffs' Exhibit 3).

In a declaration filed in support of the instant motion, however, Allen states that "I am certain that I never contacted any Deere employee about changing the grade level of any of the Plaintiffs, including Gary Lenius."[3] Ted Breidenbach, who Lenius believes was responsible for the decision to reduce Lenius' pay, was asked at his deposition whether he ever "received word" from Allen regarding the restoration of Lenius' pay grade. Breidenbach responded "absolutely not."[4] There is no evidence that Allen sent Lenius an email on this issue in 2003.

---

[1] Deposition of Gary Lenius, 80:12-14 (Plaintiffs' Exhibit 3).

[2] *Id.*, 81:4-6.

[3] Declaration of Samuel R. Allen at 3, ¶ 8 (Deere's Exhibit B).

[4] Deposition of Ted Breidenbach, 40:6-13 (Deere's Exhibit F).

In support of their argument that Allen needs to be deposed, Plaintiffs also cite emails sent to Allen by Gary Lenius and Wanda Lenius, and Allen's responses. On July 19, 2004, Lenius sent an email to Allen, with copies to Wanda Lenius and Gayle Forster, stating:

> Sam, I'd appreciate it if you or someone at corporate would visit with my wife, Wanda, and Gayle Forster about numerous personnel issues in the AG Division SM Dept. Over a dozen people have left this dept, several have quit including one very close friend of mind, and the disturbing stories I hear could fill a book. I sense several people's stress levels are reaching a point where some quality listening and productive actions need to be taken immediately for the good of our company. The sad part is that these have been discussed through the proper channels with their manager, Brian Matson, his manager, Clyde D'Cruz, and exit interview with Barry Schaffter (which I personally attended) and meetings with HR reps Susan Parker and Kevin Keith. Some of the things that have occurred are totally inappropriate and after months, nothing has been resolved.
>
> Any assistance you can provide would greatly benefit the company, show that we value our high achievers, and maintain the high integrity Deere is known for.

Email from Gary G. Lenius to Samuel R. Allen, dated July 19, 2004 (Deere's Exhibit G).

The following day, July 20, Allen responded to Lenius as follows:

> Gary: Thanks for sharing your concern.......... I will have corporate HR investigate.

Email from Samuel R. Allen to Gary G. Lenius, dated July 20, 2004 (Deere's Exhibit G).

On August 19, 2004, Wanda Lenius sent an email to Allen, with a copy to Gayle Forster, stating:

> Sam, Gayle and I have had many discussions with Kevin Keith without any resolution. We would like an opportunity to discuss numerous personnel issues with corporate HR.

5

> Anything that you can do to facilitate this would be greatly appreciated.

Email from Wanda J. Lenius to Samuel R. Allen, dated August 19, 2004 (Deere's Exhibit G). Apparently, Allen did not respond to Wanda Lenius' email.

On October 28, 2004, Lenius sent another email:

> Sam: I'm disappointed to see this was not given priority and has resulted in several of our employees feeling they had no recourse other than filing with the federal EEOC. Sadly, this could have been handled several months ago. . . . Rick McAnally and Kevin Keith know the situation.
>
> I hope you've had a chance to hear the "real story" behind all this.

Email from Gary G. Lenius to Samuel R. Allen, dated October 28, 2004 (Deere's Exhibit G).

On the following day, October 29, Allen responded as follows:

> Gary: at this point all I feel comfortable sharing is that it was not because of lack of priority, I still appreciate your willingness to bring difficult subjects forward. Based on information I have received, I am comfortable with our current position.

Email from Samuel R. Allen to Gary G. Lenius, dated October 29, 2004 (Deere's Exhibit G).

In his declaration filed in support of the instant motion for protective order, Allen states that "[a]lthough I may have, I do not recall actually receiving any emails from any of the Plaintiffs in these cases."[5] Regarding specifically the emails sent by Gary and Wanda Lenius between July and October of 2004, Allen states that "I would have simply referred them to Corporate HR and would not have followed up on the issue in any

---

[5] Declaration of Samuel R. Allen at 2, ¶ 4 (Deere's Exhibit B).

6

manner."[6] Rick McAnally testified in his deposition that he investigated the complaint at the request of Mert Hornbuckle, then vice president of human resources, but did not contact Allen about the issue.[7] Plaintiffs note, however, that in a memorandum prepared by McAnally on August 27, 2004, he begins by stating: "Called Wanda and said I had been asked by Mert and Sam to discuss the situation with her based on her husband's e-mail to Sam."[8]

After carefully considering the competing arguments, the Court concludes that Deere has met its burden of showing entitlement to a protective order, and Allen is not required to submit to a deposition at this time. While Lenius wrote an email to Allen in 2003 regarding the proposed reduction in pay grade level, Allen did not respond and there is no evidence that he played any role in having the decision reversed. Lenius' testimony regarding his communication with Allen at that time is ambiguous, at best. Allen states in his declaration that he is "certain" that he never contacted any Deere employee regarding a change in Lenius' pay grade level. Deposing Allen on this issue would simply be a fishing expedition.

The Court reaches the same conclusion regarding the investigation in 2004, although the question is somewhat closer. When Lenius sent an email to Allen on July 19, 2004, Allen responded with a perfunctory "thanks for sharing" email. If that was the only communication, then clearly a deposition of Allen would not be justified. When Lenius wrote again on October 28, 2004, however, Allen responded by stating that he was "comfortable" with Deere's position "based on information I have received." Although his response suggests that Allen was knowledgeable of the complaints, there is no evidence

---

[6] *Id.* at 3, ¶ 6.

[7] Deposition of Richard McAnally, 48:6-9 (Deere's Exhibit H).

[8] Memorandum of Rick McAnally (Plaintiffs' Exhibit 5).

he played any active role in the decision making. That is, there is simply no evidence that Allen has "unique or special knowledge of the facts at issue." *Bank of the Ozarks*, 2012 WL 293049 at *1.

Plaintiffs took the deposition of Rick McAnally, who was director of human resources during 2004, and a memorandum which he authored, dated August 4, 2007, was submitted as Plaintiffs' Exhibit 5. The memorandum states he was asked by Mert and Sam to discuss the situation. Nothing in the memorandum suggests that Sam [Allen] played any further role in the matter. Plaintiffs have yet to take the deposition of Mert Hornbuckle, then vice-president of human resources, although the Court understands that may be in the works.[9] Absent any evidence that Allen has unique or special knowledge of the facts at issue in these cases, the Court concludes that he is not required to submit to a deposition.

## ORDER

IT IS THEREFORE ORDERED that the Motion for Protective Order filed by Deere on December 11, 2013 is **GRANTED**. Deere's chairman and CEO, Samuel R. Allen, is not required to submit to a deposition at this time.

DATED this 7th day of January, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[9] At the time of hearing, Deere's attorney asserted that Hornbuckle, who retired five years ago, will submit a declaration stating that he recalls the events and that Allen always recused himself from any case where he knew the individuals involved.

8