UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| GAYLE LELA FORSTER,<br><br>Plaintiff,<br><br>v.<br><br>DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, individual, KEVIN KEITH, individual, BRIAN MATSON, individual,<br><br>Defendants. | No. 6:12-cv-02072-JSS<br><br>**DEFENDANTS' MOTION TO STRIKE UNTIMELY EXPERT REPORTS FROM MICHAEL SANDBERG AND TO PRECLUDE SANDBERG FROM TESTIFYING AT TRIAL REGARDING UNTIMELY DISCLOSED OPINIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants Deere & Company a/k/a John Deere Company ("Deere"), Clyde D'Cruz, Kevin Keith, and Brian Matson move for relief regarding Michael Sandberg, a witness that Plaintiff Gayle Forster has disclosed under Federal Rule of Civil Procedure 26(a)(2), and that Forster intends to call as a witness at trial to present expert testimony regarding her economic damages under Federal Rules of Evidence 702, 703, and 705.

More specifically, Defendants ask the Court to grant the following relief:

- strike Sandberg's untimely expert report served February 6, 2014—nine months after the Court's applicable expert-disclosure deadline;

- strike Sandberg's untimely expert report served September 25, 2014—sixteen months after the Court's applicable expert-disclosure deadline;

- preclude Sandberg from testifying at trial regarding any opinions or material contained within the untimely expert reports; and

- preclude Sandberg from testifying at trial regarding any undisclosed or new opinions about Plaintiff Gayle Forster's economic damages.

**May 2013: the Scheduling Order deadline for Forster to serve expert disclosures**

1.      The Court's November 26, 2012, Scheduling Order and Discovery Plan required Forster to provide initial disclosures by January 15, 2013; expert-witness disclosures by May 6, 2013; and rebuttal expert disclosures by August 8, 2013. *Scheduling Order and Discovery Plan* (Docket 18) (hereinafter "Scheduling Order").

2.      The Court set December 31, 2013 as the discovery deadline; based on the parties' joint request, the Court approved extending that deadline to January 31, 2014. *Order Extending Discovery Deadline* (Docket 48; *see also* Docket 47).

3.      After conferring with the parties, in May 2013, the Court scheduled a firm trial date for a two-week trial to commence February 23, 2015. *Order Scheduling Trial and Final Pretrial Conference* (Docket 31).

**May 2013: the timely Sandberg report**

4.      On January 15, 2013, Forster served initial disclosures. *Exhibit H*.[1] Forster identified Michael Sandberg as an "economist who will testify to economic loss for each of the" plaintiffs. *Exhibit H*.

5.      On that same date, Forster also served a December 27, 2012 "preliminary economic evaluation" that Sandberg prepared regarding Forster's alleged lost wages and benefits. *Exhibit A*.

6.      On May 16, 2013—after the May 6 deadline for Forster's expert disclosures—Forster sought an uncontested extension to serve expert disclosures. In that motion, Forster asserted:

---

[1] Exhibit H is not Forster's complete initial-disclosure document. For this motion, Defendants have submitted only the page that is relevant, as well as the cover and signature pages.

2

> The identity of each expert witness, *the opinions the witnesses will express, and facts considered by the expert* were provided to Defendants through the discovery process prior to the May 6, 2013 deadline, and thus, Defendants will not be prejudiced by this extension.

*Pl. Mtn. to Extend Deadline to Disclose Expert Witnesses* (Docket 28) (emphasis added).

7. Although Forster stated that "expert reports have not yet been finalized," Forster did not ask the Court to further extend the deadline to provide a "finalized" expert disclosure. *Pl. Mtn. to Extend Deadline to Disclose Expert Witnesses* (Docket 28 at 2). Forster did not seek an extension beyond May 17, 2013.

8. The Court granted the motion and extended Forster's expert-disclosure deadline to May 17, 2013. *Order Extending Deadline* (Docket 29). In granting Forster's motion to extend that deadline, the Court did not afford Forster additional time to provide "finalized" expert disclosures and reports. *Order Extending Deadline* (Docket 29).

9. Forster's May 17, 2013 expert disclosures stated that Sandberg would be called as a "financial expert" and that Sandberg's "[i]nitial report and supporting documents upon which he relied have been previously provided." *Exhibit B*. *See also Exhibit K-7*.

### November 2013: Sandberg's deposition

10. A few days later, on May 28, 2013, Defendants' attorneys contacted Forster's attorney requesting potential dates to take Sandberg's deposition. *Exhibit I*. Defendants' attorneys made multiple subsequent requests to take Sandberg's deposition, including June 19; June 26; September 26; and October 1, 2013. *Exhibit I*.

3

11. After these multiple requests, the parties scheduled Sandberg's deposition to proceed on November 26, 2013. *Exhibit J*. Because Sandberg resides in eastern Iowa, the parties agreed to depose Sandberg in Cedar Rapids, and to conduct Sandberg's deposition for the companion cases[2] on the same date. *Id*.

**November 2013: Forster's attorney announces that Sandberg may have a new opinion on pension-benefit damages**

12. Defendants deposed Sandberg over six months after the expert-disclosure deadline that the Court set for Forster in the Scheduling Order. *Exhibit K-3*.

13. A few minutes before commencing the first Sandberg deposition on November 26, 2013, Forster's attorney explained that at some point in the future, Sandberg intended to provide a new report relating to pension benefits. *Exhibit K-2*.

14. Before that discussion on November 26, neither Forster nor her attorneys communicated to Defendants that Sandberg's report was incomplete or that there was any reason Defendants should wait for Sandberg to complete his opinion before deposing him.

15. At Sandberg's deposition regarding the Forster case, Sandberg produced his work papers for calculating the Forsters' damages. *Exhibits K-3* [18:25–19:25], *K-5, K-6*. Sandberg also produced his "general file" regarding the plaintiffs in all four cases. *Exhibit K-3* [12:20–13:15], *K-4*.

**November 2013: Sandberg testifies that he asked Forster's attorney for information**

16. On November 26, Defendants completed Sandberg's depositions. Sandberg billed Defendants for his time; Defendants paid Sandberg's invoices. *Exhibit K-1*.

---

[2] On November 9, 2012, the parties moved to consolidate *discovery only* in this case and *Sellers v. Deere & Co., et al.*, 6:12-cv-2050-JSS, *Rebouche v. Deere & Co., et al.*, 6:12-cv-2064-JSS, and *Lenius v. Deere & Co., et al.*, 6:12-cv-2063-JSS. (Docket 10; *see also Sellers* Docket 18). In each case, Sandberg was the plaintiffs' economic expert.

4

17. Regarding Forster, Sandberg explained that his report was preliminary and that he relied on assumptions as to Forster's compensation because Forster and her attorney had not provided other information to him. *Exhibits K-2* [57:16–23], *K-3* [13:20–16:22, 18:21–24].

18. Sandberg testified that he informed Forster's attorney that he needed additional information to complete his report. *Exhibit K-2* [14:14–16:23, 31:18–32:5, 36:1–37:19, 55:1–56:24].

19. Sandberg's work papers show that on July 9, 2013, he sent a letter to Forster's attorney following up on a "recent telephone conversation" reiterating that Sandberg needed information regarding employer-paid fringe benefits to "complete" his opinion. *Exhibit K-6 p. 16*. That communication took place after the May 2013 expert-disclosure deadline.

20. Citing "work product," Forster's attorney refused to disclose what other communications Sandberg and Forster's attorney had regarding the information that Sandberg needed, or when those communications occurred. *Exhibit K-3* [43:9–45:11].

21. We do know that Sandberg and Forster's attorney discussed the information that Sandberg needed during a break in Sandberg's November 26, 2013 deposition, while Defendants' attorney was outdoors moving his car. *Exhibit K-3* [43:9–44:20]. Forster's attorney agreed to allow Sandberg to disclose that the discussion between Sandberg and Forster's attorney "centered exclusively around discussing precisely what information [Sandberg] would like to have if [Sandberg is] going to do a thorough due-diligent analysis on supporting any assumptions that [Sandberg] made." *Exhibit K-3* [43:15–18].

5

22. Sandberg also testified that during the deposition-break discussion, he told Forster's attorney that he needed additional information including:

- "what was in play with regard to base pay at the various levels so I know what that actually is at the low, midpoint, and higher;" and

- "the specifics on each individual prior to that point with regard to what their base pay was, what their bonus is, short-, long-term bonuses, what the employer's cost of the actual fringe benefit package they received, et cetera."

*Exhibit K-3* [43:23–44:6].

23. Sandberg testified that he had that November 2013 discussion with Forster's attorney "so that I can, in essence, complete my report to the extent that there might be additional loss of fringe benefits, as well as support the assumptions that are in my reports." *Exhibit K-3* [43:19–44:9].

24. We also know that on December 5, 2012, Forster's attorney wrote a letter to Sandberg asking that Sandberg complete "preliminary reports" by the end of December 2012. *Exhibit K-6 p. 13*. Sandberg prepared a "preliminary report" by the end of December 2012, and as discussed, Forster served it with her initial disclosures. *See Exhibit A*. What is missing from Sandberg's files is evidence showing communications from Forster or her attorney asking Sandberg to complete his opinion and report by the May 2013 expert-disclosure deadline. *Exhibits K-4, K-5, K-6*.

25. Sandberg apparently communicated with Forster's attorney on dates other than November 26, 2013 regarding the information that Sandberg needed to complete his report. But as discussed next, Forster failed to request from Deere information for Sandberg until the day before Sandberg's deposition, the day Sandberg's deposition took place, and two weeks after Sandberg's deposition.

### November and December 2013: Forster serves discovery requests seeking the information Sandberg requested

26. As the discovery deadline approached, Forster served discovery requests seeking facts and data about Deere's compensation practices:

- on November 25, 2013, Forster served an interrogatory requesting "employee benefits statements" for Forster or the cost for the employee benefits she had been provided. Although Forster served this request as an interrogatory, it was essentially a request for production of documents.

- on November 26, 2013, Forster served interrogatories requesting "base salary" information for the three to five years prior to her disability leave and the "low, mid, and high range for that salary for Grades 6 and 7."

- on December 10, 2013, Forster served interrogatories seeking "the historical actual base pay, short-term, and long-term bonus received by [Forster] for each of the three to five year period prior to 2004."

*Exhibits L-1, L-2, L-3.*

27. Forster served these requests shortly before Deere's annual company-wide holiday shutdown. Because they were Deere employees, Forster and her spouse would have known about Deere's annual shutdown. In December 2013 and January 2014, before discovery closed, Deere served responses to Forster's discovery requests. *Exhibits M-1, M-2, M-3.*

### December 2013: Forster first asserts that Sandberg cannot calculate her damages until Deere provides information

28. On December 3, the Court granted the parties' joint motion to extend the discovery deadline to January 31, 2014, warning the parties that "*No further extensions will be granted.*" *Order Extending Discovery Deadline* (Docket 48).

29. As the discovery deadline approached, Defendants requested that Forster update her damages disclosures. *Exhibit N.*

7

30. On December 4, 2013, Forster served supplemental damages disclosures. *Exhibit O*.[3] In those supplemental disclosures, Forster asserted—over six months after Forster's expert-disclosure deadline and roughly one week after Defendants deposed Sandberg—that Sandberg's report was "incomplete." And she suggested it was incomplete because Deere had not provided information—even though it was Forster who did not request the information until seven months after Forster's expert-disclosure deadline.

31. Regarding past and future lost wages, Forster's supplemental disclosures referred to Sandberg's December 2012 report, *see Exhibit A*, and noted that the report was "incomplete at this time as Mr. Sandberg is awaiting further documentation from John Deere that has been requested but not yet received. At the time this documentation is received and Mr. Sandberg can complete his report, Plaintiff will provide an updated report." *Exhibit O*.

32. Presumably, Forster sought the referenced "further documentation" in the discovery requests that Forster served one week before and one week later.

**February 2014: After discovery closes, Forster serves a new Sandberg report on pension benefit damages**

33. On February 6, 2014—nine months after Forster's expert-disclosure deadline and six days after discovery closed—Forster served a new expert report from Sandberg. *Exhibits C, P*.[4]

---

[3] Exhibit O is not Forster's complete supplemental-disclosure document. For this motion, Defendants have submitted only the pages that are relevant, as well as the cover and signature pages.

[4] Exhibit P is not Forster's complete supplemental-disclosure document. For this motion, Defendants have submitted only the relevant pages, as well as the cover and signature pages.

8

34. The report provided an entirely new opinion regarding lost pension benefits. Sandberg opined that Deere "has historically paid 12.2 percent of base pay annually" for a pension benefit and concluded that Forster incurred an additional loss of $149,054.00 in lost wages, with $94,106.00 coming from past lost pension benefits and $54,948.00 in future pension benefits. *Exhibit C*.

35. Before that February 2014 report, Sandberg had presented no opinion regarding Forster's alleged lost pension benefits. *Exhibit A*.

### September 2014: Forster serves an entirely new report from Sandberg

36. On September 25, 2014, sixteen months after Forster's expert-disclosure deadline, Forster served yet another new report from Sandberg. *Exhibits D, G*.

37. Sandberg's most recent report includes new opinions:

- Sandberg increased his fringe benefit assumptions by over 10%; and

- Sandberg's total damages calculations are now roughly $183,500 more than those in the timely served report.

*Exhibit D*.

38. In the new report, Sandberg's fringe benefit assumption increased substantially. In the timely report, Sandberg assumed fringe benefits at 13.65% of earnings. *Exhibit A*. He now has increased that assumption to 25.85% of earnings. *Exhibit D*.

39. Once again, Sandberg's most recent report has increased Forster's damages by a substantial amount—$183,500—over Sandberg's timely served report. *Exhibits A, D*.

40. Forster's attorney implicitly acknowledged that Sandberg's report was new. In the September 25, 2014 email to Defendants' attorneys providing Sandberg's new

9

report, Forster's attorney offered Defendants an opportunity to depose Sandberg a second time, stating, "If you need us to provide Sandberg again for deposition based on these reports, we would be happy to do so." *Exhibit G*.

41. Forster's attorneys provided no explanation for the untimely report. *Exhibit G*.

**September 2014: Forster's attorney hints that Sandberg will revise his opinion yet again— during trial**

42. Apparently, Sandberg is not finished revising his opinions.

43. In late September 2014, several months after discovery closed, Lenius and Forster's attorney asked Deere to provide additional information for the upcoming *Lenius* trial—apparently to allow Sandberg to revise his opinion yet again. *Exhibits E–F*.[5] As the Court is aware, the *Lenius* and *Forster* trials have now been consolidated and will commence February 23, 2015. (Docket 94). Because the Court has concluded that the "remaining claims . . . are nearly indistinguishable," the economic damages strategy for Forster is presumably comparable to the strategy for Lenius. (Docket 94).

44. Based on pre-consolidation telephone and written communications with Lenius and Forster's attorney regarding the *Lenius* trial, Defendants believe that Sandberg may revise his opinion during the now-consolidated trial—based on the testimony of a Deere human resources representative that Lenius and Forster's attorney intends to call in their case-in-chief. *Exhibit F*.

---

[5] Although Mr. Racette's letter at Exhibit F is dated September 19, 2014, Defendants did not receive it until it was faxed to Defendants' attorney on September 24, 2014, at 8:33 a.m.

10

45. On September 30, 2014, Defendants filed a similar motion in the related *Lenius* case. At the time, the *Lenius* pretrial deadlines were approaching and Defendants filed that motion because they were focusing on trial preparation for the December 2014 *Lenius* trial. Since then, the Court granted *Lenius* and *Forster*'s motion to consolidate the trials and continued the *Lenius* trial to February 2015. Given that the issues are comparable and the *Lenius* motion is nearly fully submitted, Defendants have elected to proceed with submitting this pretrial motion in the *Forster* case so that the Court may decide both motions.

**Sandberg's February and September 2014 reports are untimely and contain new opinions.**

46. Federal Rule of Civil Procedure 26(a)(2)(B) requires disclosure of "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them" and requires these disclosures be made "at the times and in the sequence that that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

47. "Preliminary expert reports" do not satisfy Rule 26(a). *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 431 n.6 (N.D. Okla. 2008).

48. "The Eighth Circuit Court of Appeals has repeatedly held that the failure to disclose an expert report is a failure to disclose under Rule 26." *Benedict v. Zimmer, Inc.*, 232 F.R.D. 305, 315 (N.D. Iowa 2005).

49. Rule 26(e) imposes a duty to supplement "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

50. "Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship" in analyzing whether an expert's "supplemental" report complies with Rule 26(a)'s disclosure requirement. *Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008). "A supplemental expert report that states additional opinions or rationales . . . exceeds the bounds of permissible supplementation." *Estate of Bruess ex rel. Bruess v. Blount Int'l, Inc.*, No. C09-2055, 2011 WL 2680760, at *8 (N.D. Iowa July 8, 2011) (citing *Cohlmia*, 254 F.R.D. at 433).

51. The Scheduling Order required Forster to provide expert witness disclosures by May 6, 2013; at Forster's request, the Court later moved that deadline to May 17. *Scheduling Order and Discovery Plan* (Docket 18); *Pl. Mtn. to Extend Deadline to Disclose Expert Witnesses* (Docket 28); *Order Extending Deadline* (Docket 29).

52. By serving new expert reports in February and September 2014—after the expert-disclosure deadline had passed, after Deere provided its own expert reports, after Defendants deposed Sandberg, and after discovery closed—Forster violated both the timing and the sequence of the discovery deadlines in the Court's Scheduling Order. She also failed to comply with Rule 26(a) and (e).

53. Sandberg's February 2014 report contains an entirely new opinion regarding alleged lost pension benefits. Forster failed to provide that report in a timely manner by the May 2013 expert-disclosure deadline.

54. As already discussed, Sandberg's September 2014 report contains entirely new opinions, including increased assumptions on the value of fringe benefits, and

12

increased damages calculations. This opinion also incorporates the untimely February 2014 opinion regarding pension benefits.

55. Even if the Court finds that the September 2014 report is true supplementation that corrects inadvertent omissions or errors, Forster did not serve the report in a "timely manner" as required by Rule 26(e). Forster had the information that Sandberg has apparently relied on since December 2013 and January 2014, yet Forster waited eight months to provide the new Sandberg report. *See Exhibits M-1, M-2, M-3*.

56. Forster failed to comply with the Scheduling Order and Rule 26(a)(2) and 26(e) when she failed to disclose the February 2014 and September 2014 opinions and reports in a timely manner.

**Forster cannot establish substantial justification for the untimely expert reports.**

57. When a party "fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information" at trial unless the non-compliant party proves that the failure to comply was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see also Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The burden is on Forster, as the non-compliant party, to prove substantial justification and harmlessness. *See Cooper v. Wullweber*, No. C10-1032, 2012 WL 1904806, at *6 (N.D. Iowa May 25, 2012) (citation omitted).

58. Forster cannot prove substantial justification for these untimely reports and opinions.

13

59. The information Forster needed to provide a complete report by the deadline was reasonably available to Forster and her expert before the May 2013 deadline. Forster simply chose not to ask for it.

60. Later, when Forster served discovery requests seeking this information in late November and December 2013, Deere provided the information in a timely manner.

61. In December 2013, Forster asserted that Sandberg did not provide a timely report because Forster was awaiting information from Deere. This after-the-fact effort to justify an untimely report and opinion fails to show that Forster's violation of the Scheduling Order and Rule 26(a)(2) was substantially justified.

62. If Forster believed that Deere had prevented her from obtaining the information her expert needed to draft a report prior to the deadline, the proper remedy would have been to bring the dispute to the Court's attention and request an extension of the deadline. *See Estate of Bruess,* 2011 WL 2680760, at *9.

63. Aside from requesting and obtaining a brief extension of time based on Forster's own error in missing the original expert-disclosure deadline, Forster did not bring any concern to the Court's attention. Instead, Forster chose to flout the Court's Scheduling Order and the Federal Rules.

64. Forster cannot establish substantial justification for these untimely expert witness disclosures.

**Forster cannot establish harmlessness from the untimely expert opinions.**

65. Forster's untimely expert disclosures are not harmless.

66. It is time for the parties to prepare for the upcoming February 2015 trial.

67. Defendants are prejudiced by the untimely expert disclosures because they occurred (a) after Forster's May 2013 expert-disclosure deadline, (b) after Defendants' expert-disclosure deadline, (c) after Defendants deposed Sandberg, (d) after discovery closed, and (e) at a time when the parties are preparing for the upcoming February 2015 consolidated trial. Forster's untimely efforts to supplement her expert disclosures with new expert reports would prejudice, inconvenience, and impose additional unnecessary expense on Defendants.

68. Discovery deadlines serve to even the playing field so the parties can prepare for trial in an orderly fashion.

69. Reopening expert discovery to allow Sandberg's untimely opinions and reports would not serve the interest of justice. Instead, it would effectively penalize Defendants for Forster's dilatory conduct.

### The appropriate sanction is to strike Sandberg's untimely reports and to preclude Sandberg from testifying regarding the opinions contained in those belated reports—and any further new opinions.

70. Forster's violation of the Court's scheduling order warrants a sanction. *See* Fed. R. Civ. P. 37(c)(1); L.R. 16(j); *Firefighters' Inst. for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 902–03 (8th Cir. 2000).

71. The Eighth Circuit has recognized that an appropriate sanction for an expert opinion that is not timely disclosed under a court's scheduling order is to limit the expert's testimony to the timely disclosed opinion. *See Sylla-Swandon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995).

15

72. Defendants request that the Court sanction Forster's conduct by striking Sandberg's February and September 2014 reports, strike any further revised reports from Sandberg that Forster may attempt to provide, and preclude Sandberg from testifying at trial regarding the opinions contained in these reports.

73. Based on recent communications with Forster's attorney, Defendants also request that the Court preclude Sandberg from testifying at trial regarding any new or undisclosed opinions that he may form in the future.

74. Based on communications with Forster's attorney on a comparable subject for the now-continued *Lenius* trial, Defendants believe that Sandberg may revise his opinions yet again during the consolidated *Lenius* and *Forster* trial.

75. The Court should preclude Forster and her expert from further efforts to revise Sandberg's expert report at this late juncture.

76. In support of this motion, Defendants file and incorporate herein Exhibits A–J, K-1–K-7, L-1–L-3, M-1–M-3, N–P. Exhibits E and M-2 will be filed under seal. Defendants also file a supporting brief.

77. Pursuant to Local Rule 7.*l*, Defendants have conferred with counsel for Plaintiff Forster regarding this motion. Plaintiff's attorney, Greg Racette, confirmed that Plaintiff does not consent to this motion and intends to resist this motion.

For these reasons, Defendants respectfully request that the Court grant Defendants' motion and order the following relief:

(1) strike Sandberg's untimely expert report served February 6, 2014;

(2) strike Sandberg's untimely expert report served September 25, 2014;

(3) preclude Sandberg from testifying at trial regarding any opinions or material contained within the untimely expert reports; and

(4) preclude Sandberg from testifying at trial regarding any undisclosed or new opinions about Plaintiff Gayle Forster's economic damages.

**For good cause, Defendants respectfully request oral argument on this motion.**

/s/ Frank Harty
/s/ Debra Hulett
/s/ Angel A. West
/s/ Frances M. Haas
/s/ Ryan W. Leemkuil
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899
Telephone: 515-283-3100
Facsimile: 515-283-3108
Email: fharty@nyemaster.com
Email: aaw@nyemaster.com
Email: dlhulett@nyemaster.com
Email: fmhaas@nyemaster.com
Email: rleemkuil@nyemaster.com
ATTORNEYS FOR DEFENDANTS

**Certificate of service**

I hereby certify that on October 17, 2014, I presented the foregoing document to the Clerk of the Court for filing and uploading into the ECF system, which will send notification to the following ECF system participants:

Gregory T. Racette
Amy Pellegrin
Hopkins & Huebner, P.C.
2700 Grand Ave., Ste. 111
Des Moines, IA 50312
Telephone: 515-244-0111
Facsimile: 515-697-4299
Email: gracette@hhlawpc.com
Email: apellegrin@hhlawpc.com
ATTORNEYS FOR PLAINTIFFS

/s/ Debra Hulett